IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHRISTINA SANDOVAL                                                                PLAINTIFF

V.                         Case No. 4:23-CV-00865-BBM

MICHELLE KING, Acting Commissioner,
Social Security Administration[1]                                                  DEFENDANT

**ORDER**

**I.     INTRODUCTION**

On November 20, 2020, Plaintiff Christina Sandoval ("Sandoval") filed a Title II application with the Social Security Administration for a period of disability and disability insurance benefits. (Tr. at 16). On the same date, she filed a Title XVI application for supplemental security income. *Id*. In both applications, Sandoval alleged that she became disabled on June 18, 2018. *Id*. The applications were denied at the initial administrative level and upon reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") issued a written decision finding that Sandoval was not disabled. (Tr. at 16–31). The Appeals Council denied Sandoval's request for review on July 13, 2023. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Sandoval has requested judicial review.

---

[1] In January of 2025, Michelle King was named Acting Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner King is automatically substituted as the Defendant.

For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION

Sandoval was 42 years old on the alleged onset date of disability, and she has a limited education. (Tr. at 29). She meets the insured status requirements of the Social Security Act through December 31, 2023. (Tr. at 18).

The ALJ found that Sandoval had not engaged in substantial gainful activity since June 18, 2018, the alleged onset date of disability.[3] *Id*. At Step Two, the ALJ determined that Sandoval has the following severe impairments: rheumatoid arthritis, fibromyalgia, bilateral elbow epicondylitis, lumbar degenerative changes, right upper extremity degenerative changes, bilateral hip degenerative changes status post right hip arthroscopy and bilateral hip replacements, bilateral knee degenerative changes, left shoulder degenerative changes and rotator cuff tear status post arthroscopic repair, diabetes mellitus, obesity, anxiety, and depression. (Tr. at 19).

At Step Three, the ALJ determined that Sandoval's impairments did not meet or equal a Listing.[4] (Tr. at 19). Before proceeding to Step Four, the ALJ determined that Sandoval had the residual functional capacity ("RFC") to perform work at the sedentary

---

[2] The parties consented in writing to the jurisdiction of a United States Magistrate Judge.

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4).

[4] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

exertional level, with additional restrictions: (1) no more than occasional climbing of ramps and stairs; (2) never climbing ladders, ropes, or scaffolds; (3) no more than occasional balancing, stooping, kneeling, crouching, and crawling; (4) cannot constantly use the upper extremities, but can frequently use the upper extremities to reach, handle, finger, and feel; and (5) is limited to simple, repetitive work with simple work-related decisions. (Tr. at 22).

At Step Four, the ALJ determined that Sandoval was unable to perform any of her past relevant work. (Tr. at 29). At Step Five, the ALJ relied upon testimony from a Vocational Expert to determine that, based on Sandoval's age, education, work experience, and RFC, she was capable of performing work in the national economy. (Tr. at 29–31). Therefore, the ALJ concluded that Sandoval was not disabled. (Tr. at 30–31).

### III. DISCUSSION

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations

omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Sandoval's Arguments on Appeal

Sandoval contends that the ALJ's decision is contradictory and unsupported by substantial evidence. (Doc. 13 at 7). Although sometimes hard to follow, the Court interprets Sandoval's specific arguments to include: (1) the ALJ erred in his analysis of the evidence at Step Three, *id*. at 7–11; (2) the RFC analysis is flawed, *id*. at 11; (3) the ALJ did not fairly consider the opinions of her treating provider and consultative physical examiner, *id*. at 11–15; (4) the ALJ did not give proper consideration to Sandoval's testimony regarding the impact of her impairments, *id*. at 15–16; and (5) the ALJ's opinion that Sandoval's ability to travel to California disqualified her for disability benefits was error. (Doc. 13). The Court will address each of these arguments below.

#### 1. ALJ's Analysis at Step Three

Sandoval argues that the ALJ's analysis of the record at Step Three—regarding whether Sandoval met a Listing and determining Sandoval's RFC—was flawed and contradictory. (Doc. 13 at 9–16). Specifically, Sandoval claims the ALJ erred in finding

4

that she had a normal gait on many occasions, despite medical records noting her gate as antalgic; Sandoval also argues the ALJ erred when he stated that her treatment for arthritis was conservative rather than aggressive and invasive.

By way of background, Sandoval was obese and had limitations stemming from rheumatoid arthritis, as well as degenerative changes in her shoulder, knee, and hip. She treated these issues with medication, and doctors urged regular exercise and a better diet to treat her obesity.[5] (Tr. at 629–634, 649). Sandoval also received both left and right hip replacements, a scope of her shoulder, and knee injections. (Tr. 54–55; 57). Sandoval stated that, following the surgeries, her right hip has healed well with no notable problems, but her left hip still has problems with its range of motion, swelling, numbness, and weakness. *Id.* at 55. Likewise, Sandoval noted that her shoulder is doing well since being scoped, but the recovery time is longer than she expected. *Id.* Sandoval stated that she is getting shots in her knee to "buy [her] some time" because she does not want surgery yet. *Id.* at 57.

Turning to Sandoval's argument regarding her antalgic gait, the ALJ did note that, at times, Sandoval's gait was antalgic, and, at times, it was normal. (Tr. at 24–27). The ALJ relied on Sandoval's changing gait as evidence that Sandoval could stand and walk as needed for sedentary work. (Tr. 26). Similarly, the ALJ noted that Sandoval was prescribed medications and receiving Simponi infusions to treat her arthritis. (Tr. 24). This was a fair evaluation of the facts in the record. (Tr. at 717, 719, 734, 938, 1208).

---

[5] *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (encouragement to exercise constituted evidence in support of ALJ's findings).

The ALJ also discussed that Sandoval used assistive devices on occasion, although none were prescribed. (Tr. at 23–27). He described in detail the treatments she received for arthritis and joint pain, including infusions of Simponi. (Tr. at 24). He detailed Sandoval's subjective complaints of pain and her described limitations in walking, standing, and sitting. (Tr. at 23). The ALJ explained Sandoval's objective imaging findings and wrote about Sandoval's multiple surgeries. (Tr. at 23–24). He also noted that Sandoval was recommended for physical therapy. *Id*.

Finally, the ALJ noted Sandoval's improvement with treatment. (Tr. 26). In January 2022, Sandoval's hips were doing well, and she had an upcoming vacation. (Tr. at 943–947; 24). The ALJ further noted that, on her vacation in 2022, Sandoval claimed she was able to walk around San Francisco for five days with "minimal trouble." (Tr. 24). Her rheumatologist said that arthritis was under great control.[6] *Id*. Sandoval also said she was doing "really well" after shoulder surgery. (Tr. at 24, 918). Further, the ALJ systemically went through each of Sandoval's subjective complaints and compared them with the medical records, finding that most of Sandoval's complaints were not supported by the record. (Tr. 25–26). For example, the ALJ noted that Sandoval "alleged drowsiness and brain fog, but her medical providers found her to be alert, oriented, and cognitively intact." *Id.*

---

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968 F.2d 725, 728 (8th Cir. 1992).

The ALJ also discussed Sandoval's ability to perform daily activities, like attending medical appointments, paying bills, driving, making simple meals, and shopping online. (Tr. at 21–22, 345–352). These activities are inconsistent with Sandoval's complaints of disabling pain. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Sandoval makes a glancing argument that her arthritis met Listing 14.09, but she did not show she met all of the requirements of that Listing.[7] For example, Sandoval did not show the medical need for an assistive device. (Tr. at 25–26). She did not show that she had ankylosing spondylitis. (Tr. at 20). She did not show marked limitation in the ability to perform daily activities. *Id*. She did not show a marked limitation in social functioning. *Id*. In fact, Sandoval was routinely cooperative and pleasant at provider visits and said that she regularly spent time with others. (Tr. at 21). In sum, the ALJ properly characterized and discussed Sandoval's medical conditions at Step Three.[8]

---

[7] https://www.ssa.gov/disability/professionals/bluebook/14.00-Immune-Adult.htm#14_09

[8] Sandoval also argues that the arthritis in her hands means she could not perform the manipulatives listed in the RFC. But, despite degenerative changes in her hands, she showed full grip strength and an ability to grasp objects, with adequate fine motor movements. (Tr. at 689, 943). Sandoval has not shown that her arthritis was disabling.

## 2. The ALJ's Analysis of Medical Opinion Evidence

Next, Sandoval argues that the ALJ erred in how he evaluated medical provider opinion evidence.[9] Physician Assistant Dia Watson saw Sandoval in 2022 and, at that time, opined that Sandoval would have some limitation in standing and sitting, and she would have to sit down to rest when walking. (Tr. at 1208). The ALJ found this opinion partially persuasive. (Tr. at 27). He explained that the opinion was on target with regard to Sandoval's need for no more than sedentary exertional work. *Id.* But Watson's own notes showed that Sandoval's range of motion in her shoulder, hips, and knees was improving. (Tr. 1208). The ALJ noted that, based on these improvements, more rigorous RFC restrictions were not warranted. (Tr. at 27). The ALJ also noted that Watson's opinion did not fully explain why he imposed the limitations; specifically, the ALJ found the limitations "vague and undefined." *Id.* Indeed, Watson did not cite examples or descriptions connecting his restrictions to Sandoval's functional abilities. *Id.* The ALJ properly characterized this opinion.

Consultative Examiner Edita Newton, M.D., evaluated Sandoval in person in April 2021. (Tr. at 686–692). She stated, based on the examination and the objective evidence, that Sandoval should be able to sit, walk, stand, and lift/carry objects up to 12 pounds for

---

[9] ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id.*

a partial workday. *Id*. at 689. She then said that she should be able to hold a conversation, respond appropriately to questions, and carry out and remember instructions without limitation for a full workday. *Id*. The ALJ found this opinion partially persuasive, stating that an RFC for simple work would better capture Sandoval's limited mental abilities (the RFC was more restrictive that Newton opined). (Tr. at 28–29). The ALJ noted that pain and fatigue, in combination with her documented anxiety and depression, would mean Sandoval could perform no more than simple, repetitive work. *Id*. at 29.

Dr. David Backstedt evaluated Sandoval in December 2018. (Tr. at 27). The ALJ did not find Dr. Backstedt's opinion to be persuasive, as he simply provided "temporary post-procedure limitations, rather than medical opinions about the claimant's long-term functional abilities." *Id.* at 27. Given that the limitations were "explicitly time-limited," they were not supported as long-term limitations and were inconsistent with the other medical opinion evidence. *Id.*

State Medical Consultants—Dr. Judith Forte and Dr. Jonathan Norcross—found that Sandoval could perform "sedentary work with occasional postural activities of all kinds." (Tr. at 27). The ALJ found Dr. Forte's and Dr. Norcross's opinions partially persuasive. *Id.* Specifically, the ALJ found that the RFC for sedentary work with exertional limitations was supported by the record; however, the ALJ found that *additional* postural and manipulative limitations were warranted given Sandoval's subsequent surgeries on her left hip and left shoulder. *Id.*

Sandoval quibbles with the opinion's limitation to sedentary work for a partial workday, claiming that "partial" is imprecise. But "partial" corresponds to the definition

9

of sedentary work; sedentary work involves mostly sitting, with only occasional walking and standing, and lifting of no more than 10 pounds at a time. 20 C.F.R. § 404.1567(a). As previously discussed, the ALJ analyzed several medical opinions when determining the appropriateness of the partial-workday limitation. Specifically, the ALJ found the opinions of Dr. Edita Newton; Die Watson, PA; Dr. Judith Forte; and Dr. Jonathan Norcross partially persuasive. (Tr. 26–29). Accordingly, the ALJ properly and appropriately considered the medical opinion evidence.

### 3. Sandoval's Daily Activities

Lastly, Sandoval contends that the ALJ improperly considered her ability to travel, relying on such to deny her benefits. The Court acknowledges that the ALJ mentioned several times in his opinion that Sandoval went to San Francisco in 2022 and walked quite a bit while there in support of his finding that her complaints of disabling symptoms were not consistent with her reported daily activities or the medical records. (Tr. at 20, 24, 25, 26, 943). Notably, however, the ALJ also mentioned many times in his opinion that Sandoval acknowledged her ability to complete a number of other daily activities, including driving, making simple meals, using social media, and shopping online. (Tr. at 21). An ALJ is allowed to consider a claimant's self-reported daily activities when he evaluates the claim. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). He did not err in finding that a trip to San Francisco, in combination with the other daily activities Sandoval stated she could complete, undermined Sandoval's claim that she was totally disabled. *See, e.g.*, *Milam v. Colvin*, 794 F.3d 978, 982 (8th Cir. 2015) (cooking, cleaning, showering, shopping); *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (driving,

shopping, bathing, and cooking); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012), 680 F.3d at 1067 (vacations, daily chores, providing self-care); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (cooking, cleaning, visiting friends and relatives, and attending church); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (some housework, cooking, and shopping). The ALJ's consideration of Sandoval's daily activities in determining her RFC was proper.

## IV.   CONCLUSION

The Commissioner's decision in this case to deny benefits is supported by substantial evidence in the record. The ALJ properly analyzed Sandoval's impairments and did not err in evaluating the medical opinion evidence. The ALJ's consideration of Sandoval's ability to travel, in conjunction with her ability to complete other daily activities, was not legal error. The finding that Sandoval was not disabled within the meaning of the Social Security Act, therefore, must be affirmed.

IT IS THEREFORE ORDERED THAT the decision of the Commissioner is AFFIRMED. Judgment will be entered for the Defendant.

DATED this 22nd day of January, 2025.

_____
UNITED STATES MAGISTRATE JUDGE